UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Advanced Surgery Center LLC,

    Plaintiff,

v.

Allstate Property and Casualty Insurance Company,

    Defendant.

Case No. 17-10130

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE [10]**

This matter is before the Court on Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Docket 10.) Plaintiff's complaint arises out of a motor vehicle accident and claims related to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*. Plaintiff filed a response to Defendant's motion and Defendant filed a reply. (Dkts. 12, 13.) The Court heard Defendant's motion on August 16, 2017.

**I.    FACTS**

Plaintiff Advanced Surgery Center ("Plaintiff") is a health care provider who provided necessary medical services and accommodations for Vaneshia Williams (not a party to this action), after Williams sustained bodily injuries in a motor vehicle accident. (Compl. ¶¶ 5-7.) The accident occurred on September 8, 2015. (Def.'s Br. in Support of Mot. Dismiss 1, dkt. 10.) Williams has a no fault policy with Defendant, to cover the expenses incurred in the

accident.[1] (Compl. ¶ 8.) Plaintiff submitted to Defendant proof of its charges for services it provided to Williams for injuries that arose from the motor vehicle accident. (Compl. ¶ 9.) Defendant did not pay Plaintiff and Plaintiff brought this action for breach of contract, initially filed in Wayne County Circuit Court, seeking declaratory relief and a judgment in the amount of approximately $75,000.000, together with interest, costs and attorneys fees. (Compl. ¶¶ 10-14.) Defendant removed to this Court on January 16, 2017. (Dkt. 1.)

Defendant now seeks dismissal of Plaintiff's cause of action on the basis of the Michigan Supreme Court's recent decision in *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 895 N.W.2d 490 (Mich. 2017), arguing that a healthcare provider such as Plaintiff does not possess a statutory cause of action against a No-Fault insurer for the payment of an injured person's benefits. (Def.'s Mot. Dismiss 1.)

## II. LEGAL STANDARD

Defendant seeks to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), alleging that Plaintiff lacks standing to pursue a direct cause of action against Defendant, and Fed. R. Civ. P. 12(b)(6), alleging the "failure to state a claim upon which relief can be granted." Fed. R. Civ.

---

[1] Although not part of Plaintiff's complaint, Defendant in its statement of facts alleges that because Williams had no auto policy affording her coverage for no-fault benefits, she made a claim for such benefits with the Michigan Assigned Claims Plan on September 21, 2015. (Def.'s Br. in Support of Mot. Dismiss 1, Exs. A, B, dkt. 10-2, 10-3.) According to Defendant, the claim was assigned to Defendant on October 13, 2015 and Williams' no-fault benefits were subsequently denied in March 2016, with a denial letter sent to Williams' attorney. (Def.'s Br. in Support Ex. C, dkt. 10-4.) In December, 2016, while Williams' no-fault cause of action was pending in Oakland County Circuit Court, Plaintiff filed a separate cause of action in Wayne County Circuit Court seeking reimbursement of no-fault PIP (personal injury protection) medical expenses on behalf of Williams. (Def.'s Mot. Dismiss. 1.) Williams settled her lawsuit in Oakland County on April 13, 2017, and the Oakland County Circuit Court entered a stipulated order of dismissal on May 2, 2017. (Stipulation for Dismissal, Def.'s Mot. Dismiss, Ex. E, dkt. 10-6.)

P. 12(b)(1), (6). Fed. R. Civ. P. 12(b)(1) provides the basis for a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *National Org. For Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994).

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party. A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citations and emphasis omitted).

With respect to "failure to state a claim," the Sixth Circuit noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n,* 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court

3

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (quotation and citation omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed.R.Civ.P. 10(c)). "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335-36; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)(documents not attached to the pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim") (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. Whether Plaintiff Lacks Standing to Bring This Cause of Action

As an initial matter, the parties agree that Michigan law applies to the substantive issues herein. *See generally Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Defendant relies on the Michigan Supreme Court's recent holding in *Covenant* that "healthcare providers do

not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act," thus intervening in "decades of [Michigan] Court of Appeals caselaw concluding that a healthcare provider may assert a direct cause of action against a no-fault insurer to recover no-fault benefits." *Covenant*, 895 N.W.2d at 493, 496. *Covenant* was decided on May 25, 2017. *Id.* Plaintiff responds that *Covenant* should not be applied retroactively to currently pending claims such as this. The *Covenant* decision did not address the issue of whether it should be applied retroactively or prospectively.

The few post-*Covenant* state court decisions that reference *Covenant* suggest that the state courts are applying *Covenant* retroactively. As of the time of this writing, the Michigan Supreme Court has remanded two cases to the Court of Appeals for reconsideration in light of *Covenant*, in lieu of granting leave to appeal. *See Bronson Methodist Hosp. v. Michigan Assigned Claims Facility*, 897 N.W.2d 735 (Mich. 2017); and *Spectrum Health Hosps. v. Westfield Ins. Co.*, 897 N.W.2d 166 (Mich. 2017). On July 18, 2017, the Michigan Court of Appeals in an unpublished decision applied the May 25, 2017 *Covenant* holding retroactively to an insurer's appeal as of right of the trial court's October 19, 2015 order denying the defendant's motion for summary disposition of the claims of intervening plaintiff health care providers. *See Eubanks v. State Farm Mut. Auto. Ins. Co.*, No. 330078, 2017 WL 3044126 (Mich. Ct. App. July 18, 2017)(the plaintiff insureds/injured parties' claims had already been dismissed with prejudice for failing to comply with discovery and failing to appear; the intervening providers' claims remained). The underlying accident had occurred on July 8, 2013. *See id.* at *1. While the federal court is bound by controlling decisions of the state's highest court in applying state law, "[i]ntermediate state appellate courts'

5

decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

Consistent with the application of *Covenant* in these state court decisions, Defendant points out that "[t]he general rule in Michigan is that judicial decisions are given complete retroactive effect." *People v. Houlihan*, 706 N.W.2d 731 (Mich. 2005). "Prospective application is given only to decisions that overrule clear and uncontradicted case law." *Id.* Defendant further argues that *Covenant* is not the "declaration of a new rule, but . . . a vindication of controlling legal authority." *Rowland v. Washtenaw County Road Comm'n*, 731 N.W.2d 41, 56 (Mich. 2007).

"The general principle is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former decision is bad law, but that it never was the law." *Spectrum Health Hospitals v. Farm Bureau Mut. Ins. Co. of Michigan*, 821 N.W.2d 117, 135 (Mich. 2012). There is, however, an exception

> When a "statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision."

*Id.* at 135-36. Plaintiff argues in favor of prospective application of *Covenant*; the Michigan Supreme Court has held that

> Although the general rule is that judicial decisions are given full retroactive effect, a more flexible approach is warranted where injustice might result from full retroactivity. For example, a holding that overrules settled precedent may properly be limited to prospective application. Moreover, the federal constitution does not preclude state courts from determining whether their

6

own law-changing decisions are applied prospectively or retroactively. *Pohutski v. City of Allen Park*, 641 N.W.2d 219, 232 (Mich. 2002). The *Pohutski* court listed three factors to be considered "in determining when a decision should not have retroactive application" and, in the civil context, the following threshold question: "[W]hether the decision clearly established a new principle of law." *Id.* at 233 (citing *Riley v. Northland Geriatric Center (After Remand)*, 433 N.W.2d 787 (Mich. 1988)).

In *Pohutski*, the court recognized that "[a]lthough this opinion gives effect to the intent of the Legislature that may be reasonably be (sic) inferred from the text of the governing statutory provisions, practically speaking our holding is akin to the announcement of a new rule of law, given the erroneous interpretations set forth in *Hadfield* and *Li*." *Pohutski*, 641 N.W.2d at 233 (referring to two Michigan Supreme Court cases). Yet in *Pohutski*, the prior decisions that were overruled were both from the Michigan Supreme Court, not the court of appeals. The *Covenant* decision itself states that the prior court of appeals decision was "premised on the notion that a healthcare provider possesses a statutory cause of action against a no-fault insurer for payment of no-fault benefits," yet this premise was "gleaned . . . not from the text of the no-fault act, but from previous decisions of the Court of Appeals that are likewise devoid of the statutory analysis necessary to support that premise." *Covenant*, 895 N.W.2d at 498. According to *Covenant*, the basis for a construction of the no-fault statute that allowed standing by healthcare providers was founded in previous court of appeals decisions, not the courts of last resort. By finding that the *Covenant* decision did not establish a new principle of law, the Court need not consider the remaining factors as to whether the new rule should be retroactive.

Based on the state court application of *Covenant* and the analysis above, the Court

7

finds that *Covenant* applies in this matter and will grant Defendant's motion to dismiss without prejudice. *See* Fed. R. Civ. P. 12(b)(1) and 41(b) (Involuntary dismissal operates as an adjudication on the merits "[u]nless the dismissal order states otherwise" or "except for [a dismissal] for lack of jurisdiction").

### B. Whether Plaintiff May Proceed Under A Valid Assignment Of The Insured's No-Fault Benefits

Defendant also asks this Court to conclude that any prospective assignment by Williams to Plaintiff would be invalid. (Def.'s Br. Support Mot. Dismiss 8.) Yet there is no indication that Plaintiff is seeking an assignment from the insured in this case. Therefore, the Court need not address this prospective issue.

Instead, Plaintiff argues that its alternative is to amend the complaint to add the injured party, Williams, as a defendant, and trigger the indemnification duties of Defendant set forth in *Insurance Commissioner Bulletin 92-03*.[2] Yet the cases on which Plaintiff relies to argue that Defendant will have an obligation to "fully defend and indemnify the insured" are distinguishable. In *LaMothe v. Auto Club Ins. Ass'n*, 543 N.W.2d 42 (Mich. Ct. App. 1995) (overruled by *Covenant* on related grounds) there existed an enforceable promise by the insurer to defend and indemnify the insured. *LaMothe*, 543 N.W.2d at 45, n.4 (the

---

[2]

> The purpose of this bulletin is to remind no-fault insurers that they are required to provide insureds and claimants with complete protection from economic loss for benefits provided under personal protection insurance. Auto insurers must act at all times to assure that the insured or claimant is not exposed to harassment, . . . or lawsuit as a result of a dispute between the health care provider and the insurer.

(Michigan Department of Commerce, Ins. Bureau Bulletin 92-03, Oct. 23, 1992, Pl.'s Resp. Ex. 1, dkt. 12-1.)

defendant insurer had sent a letter to plaintiff-insured's attorney, expressly stating that "[i]f any of the medical providers bring a claim against [the plaintiff], ACIA [the defendant] will defend and indemnify him"); *see also McGill v. Automobile Ass'n of Michigan*, 526 N.W.2d 12 (Mich. Ct. App. 1994) ("defendants have expressly stated that they will defend and indemnify plaintiffs in the event that plaintiffs are sued by their providers for the outstanding balance"; the court also cited the Insurance Bureau Bulletin 92-03, Oct. 23, 1992). Unlike *LaMothe*, there is no evidence or allegation before the Court that there is a specific term or enforceable promise providing for provision of indemnity and/or defense. Defendant argues that it never issued an insurance policy to Williams. Further, Defendant argues that as of March 1, 2016, Defendant denied Williams further personal injury benefits and there is no reason to hold her harmless from any providers with whom she treated after the denial. (Def.'s Mot. Dismiss Ex. C, dkt. 10-4.) Finally, Defendant argues that Insurance Bulletin 92-03 is not law and does not confer a statutory obligation to provide a defense in any situation other than a "balance-billing" situation. Defendant admits that the Court may afford Bulletin 92-03 consideration, but is not bound by it. (Def.'s Reply 4, dkt. 13.) Again, this issue is premature, and the Court is without enough information from which to determine whether an obligation to defend and indemnify may exist.

### C. Whether Plaintiff's Standing is Based On A Disputed Question of Fact

Finally, Plaintiff argues that "[i]t is settled law in Michigan that a motion to dismiss should not be granted where the plaintiff's standing to sue is based upon a disputed question of fact." *Lewkowicz v. Youngblood*, 273 N.W.2d 514 (Mich. Ct. App. 1978), *aff'd sub nom. Romulus City Treasurer v. Wayne Cnty. Drain Comm'r* 322 N.W.2d 152 (Mich. 1982). Plaintiff does not develop this argument nor identify the disputed question of fact.

**IV. CONCLUSION**

For the reasons set forth above the Court GRANTS in part Defendant's motion to dismiss and DISMISSES Plaintiff's complaint without prejudice. Defendant's request for attorneys fees and costs is DENIED.

**SO ORDERED.**

    s/Nancy G. Edmunds
    Nancy G. Edmunds
    United States District Judge

Dated: September 11, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 11, 2017, by electronic and/or ordinary mail.

    s/Carol J. Bethel
    Case Manager